1  VICTORIA A. YUNDT (CA Bar No. 323186)
   SYLVIA SHIH-YAU WU (CA Bar No. 273549)
2  Center for Food Safety
   303 Sacramento Street, 2nd Floor
3  San Francisco, CA 94111
   Ph: (415) 826-2770
4  Fax: (415) 826-0507
   Emails:  tyundt@centerforfoodsafety.org
5           swu@centerforfoodsafety.org
6

7  *Counsel for Plaintiff*

8              THE UNITED STATES DISTRICT COURT
9         FOR THE NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
10

11 CENTER FOR FOOD SAFETY            )  Case No. 20-cv-8601
                                     )
12            *Plaintiff,*           )
                                     )
13      v.                           )  **COMPLAINT FOR DECLARATORY**
                                     )  **AND INJUNCTIVE RELIEF**
14 ENVIRONMENTAL PROTECTION          )
   AGENCY,                           )
15                                   )
                                     )
16            *Defendant.*           )
17                                   )
18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     The Center for Food Safety (CFS)—a nonprofit public interest and environmental advocacy organization working to protect public health and the environment—brings this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, challenging Defendant U.S. Environmental Protection Agency (EPA)'s failure and refusal to provide records to CFS in response to requests for records submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020 for which there are no applicable exemptions under FOIA.

2.     Since its inception in 1997, CFS has closely monitored EPA's decision-making process in regards to its registration of toxic pesticides, including dicamba and its newer iterations XtendiMax, FeXapan, and Engenia. As part of its oversight and advocacy strategy, CFS has submitted numerous requests for records regarding EPA's regulatory decisions involving the registration, use, and labeling of pesticides under FOIA, 5 U.S.C. § 552(a)–(m). The goal of each of these requests was to open the operations and activities of government to public scrutiny and contribute significantly to the public's understanding of the agency's actions.

3.     CFS filed the four disputed FOIA requests with EPA to gain a better understanding of EPA's decision-making process in regards to its registration of pesticides generally, and dicamba and its newer iterations XtendiMax, FeXapan, and Engenia specifically. Without the requested records, CFS cannot determine whether EPA's regulatory decisions pertaining to the registration, use, and labeling of dicamba and its newer iterations XtendiMax, FeXapan, and Engenia comply with applicable laws, such as the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq., and the Endangered Species Act, 16 U.S.C. §§ 1533-44.

4.     Although FOIA requires EPA to release responsive records "promptly," EPA has continually failed to comply with FOIA's statutory deadlines with respect to CFS's requests. Consequently, EPA has improperly withheld responsive records, depriving CFS of its statutory right to obtain records containing crucial information about EPA's regulation and registration of toxic pesticides.

5.    EPA is also violating FOIA by failing to conduct an adequate search for responsive records, and by failing to provide CFS with both an initial determination as to the scope of the records to be produced or withheld, and an estimated date by which the agency's search will be complete.

6.    EPA's unlawful withholding of public records undermines FOIA's basic purpose of government transparency. Because prompt access to these records is necessary to effectuate FOIA's purpose, CFS respectfully asks this Court to enjoin EPA from withholding requested records, order EPA to release improperly withheld records, and grant declaratory relief.

## JURISDICTION

7.    This Court has subject matter jurisdiction over this action because the claims arise under a federal statute. *See* 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1331.

8.    This Court also has personal jurisdiction over the parties because Plaintiff CFS's headquarters and principal place of business is located in San Francisco, California, which is in the Northern District of California. *See* 5 U.S.C. § 552(a)(4)(B).

## VENUE

9.    This Court is also the proper venue for this action because Plaintiff CFS sent its FOIA requests to EPA, exchanged related correspondence, and received EPA's responses from its headquarters in San Francisco, California. Thus, a substantial part of the events giving rise to this action occurred in San Francisco, which is in the Northern District of California. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1391(e); Civil L.R. 3-2(c).

## INTRADISTRICT ASSIGNMENT

10.    Because a substantial part of the events giving rise to this action occurred in San Francisco, California, this action is properly assigned to the San Francisco Division. Civil L.R. 3-2(c), (d).

## PARTIES

11.    Plaintiff CFS is a national 501(c)(3) nonprofit public interest and environmental advocacy organization that empowers people, supports farmers, and protects the environment. CFS is a membership based nonprofit organization with over 970,000 members that works to address the impacts of the food system on public health, animal welfare, and the environment. CFS often uses

information requests to challenge government abuses and corporate wrongdoing, advocate for policy change, and educate the public about the harms of industrial agriculture. Through nearly two decades of involvement in public interest and environmental litigation and policymaking as it relates to food, CFS has demonstrated its ability to take technical information provided by government agencies and distill it into a format that is accessible to the public. CFS employs science and policy experts who have analyzed FOIA, federal environmental laws, and environmental and scientific reports for their entire careers. CFS puts out reports on a range of food and agricultural topics, including pesticides and other topics that tend to be difficult for the layperson to understand without professional assistance. CFS has been engaged in ongoing efforts to educate our members and the public about the ongoing harms of pesticides, including specific dicamba pesticides, such as XtendiMax, FeXapan, and Engenia, to pollinators, public health, and the environment. CFS and its members are harmed by EPA's violations of FOIA, as such violations preclude CFS from gaining a full understanding of the decision-making process regarding the underlying agency actions, and prevent CFS from disseminating information to the public concerning EPA's oversight of the registration, use, and labeling of pesticides.

12.    Defendant EPA is an agency within the Executive Branch of the United States Government. EPA is in possession and control of the records that CFS seeks, and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). FIFRA requires EPA to approve, or "register," pesticides before they are used or sold. 7 U.S.C. § 136a(a). EPA is also responsible for ensuring that its registration decisions for pesticides comply with the ESA, 16 U.S.C. §§ 1533-44, and other applicable environmental laws. Before EPA registers a pesticide, such as dicamba and its newer iterations XtendiMax, FeXapan, Engenia, EPA must review the proposed registration, determine the potential environmental impacts, and conduct further analysis as necessary. Thus, EPA is the "agency" that has control and possession of the requested "record[s]." 5 U.S.C. § 552(f)(2).

## STATUTORY BACKGROUND

13.    The basic purpose of FOIA is to promote government transparency and public oversight of agency action. *See, e.g., Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (noting that

"disclosure, not secrecy is the dominant objective of the Act"). The statute effectuates this objective by establishing the public's right "to pierce the veil of administrative secrecy" and access all federal agency records, *id.*, unless such records may be withheld pursuant to one of nine, narrowly construed exemptions. *See* 5 U.S.C. § 552(b)(1)-(9).

14. FOIA imposes stringent deadlines on federal agencies with regard to making initial determinations in response to FOIA requests. Within twenty working days of receiving a FOIA request, an agency must determine whether it will release the requested records, and must notify the requester of its determination, the reasons for its decision, and the requester's right to appeal an adverse decision to the head of the agency. *Id.* § 552(a)(6)(A).

15. Congress has specified certain limited instances in which federal agencies may extend this twenty-working-day deadline. First, an agency may toll the deadline to seek additional information or clarification from a requester, but that tolling period ends when the agency receives such information or clarification. *Id.* § 552(a)(6)(A)(ii). Second, in "unusual circumstances" an agency may extend the deadline no more than ten additional working days by providing written notice to the requester that sets forth the circumstances justifying the extension. *Id.* § 552(a)(6)(B)(i).

16. FOIA requires that an initial determination under 5 U.S.C. § 552(a)(6)(A) "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n (CREW)*, 711 F.3d 180, 188 (D.C. Cir. 2013).

17. If an agency does not comply with "FOIA's explicit timelines [for making an initial determination], the penalty is that the agency cannot rely on the administrative exhaustion requirement to keep cases [out of] court." *Id.* at 190-91; *see also* 5 U.S.C. § 552(a)(6)(C)(i) (stating that if an agency fails to respond within the applicable time limits under FOIA, the requester "shall be deemed to have exhausted his administrative remedies."). The requester thus has "immediate recourse to the courts to compel the agency's response to [her] FOIA request[s]." *Oglesby v. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990).

18.    For a determination to "trigger the administrative exhaustion requirement," the agency must complete "at least" three substantive requirements: "(1) gather and review the documents; (2) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (3) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188; *see also Oglesby*, 920 F.2d at 67 (finding that an agency's response did not trigger the exhaustion requirement because "merely inform[ing] [the requester] that he could call the agency for further information...did not qualify as notice of...right to appeal").

19.    With regard to production of responsive records, "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188 (citing 5 U.S.C. § 552(a)(3)(A), (6)(C)(i)); *see also Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (holding that an agency's unreasonable delay in disclosing nonexempt records violated FOIA, and "courts have a duty to prevent these abuses").

20.    FOIA also requires that the agency provide requestors "information about the status of a request...including...an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

21.    In addition, FOIA provides a waiver for fees associated with the procurement of documents subject to FOIA requests. FOIA requires agencies to waive fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

22.    FOIA further requires each agency to "make reasonable efforts to search for [responsive] records," *id.* § 552(a)(3)(C)-(D), in a manner that is "reasonably calculated to uncover *all* relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (emphasis added); *see also Oglesby*, 920 F.2d at 68 (An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.").

23.   Similarly, "if an agency has reason to know that certain places may contain responsive documents," the agency is required to search those places. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1083 (N.D. Cal. 2015) (holding that an agency's search was inadequate because of its failure to search places it "had reason to know...contained responsive documents").

24.   An agency bears the burden to demonstrate with reasonable detail that the "search terms and type of search performed" was likely to uncover *all* responsive records. *Oglesby*, 920 F.2d at 68; *see also Our Children's Earth Found.*, 85 F. Supp. 3d at 1082 (holding that an agency must provide affidavits explaining "what records were searched, by whom, and through what process" to satisfy the agency's burden).

25.   The agency must also demonstrate that the scope of the agency's search was adequate. When tailoring the scope of the search, an agency "ha[s] a duty to construe FOIA records requests liberally." *Yagman v. Pompeo*, 868 F.3d 1075, 1079 (9th Cir. 2017) (holding that the scope of a request is clear if it provides "*some* reasonable description" of the requested records, such as times, dates, locations, types of documents, or types of information) (emphasis in original); *see also Law. Comm. for Civ. Rights of S.F. Bay Area v. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1130-31 (N.D. Cal. 2008) ("[A]n agency cannot withhold a record that is reasonably within the scope of the request on the grounds that the record has not been specifically named by the requester.").

26.   After an agency identifies a responsive record, the agency must disclose the entire record "as a unit," unless a statutory exemption allows the agency "to redact specific information within [the record]." *Am. Immigr. Law. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016); *see also* 5 U.S.C. § 552(a)(3)(A), (d). The agency may not "redact particular information within the responsive record on the basis that the information is non-responsive." *Am. Immigr. Law. Ass'n*, 830 F.3d at 678.

27.   In certain limited instances, an agency may withhold records or portions of records pursuant to nine specific exemptions. 5 U.S.C. § 552(b). These exemptions "were explicitly made

exclusive" and "must be narrowly construed" in keeping with FOIA's presumption in favor of disclosure. *Milner v. Dep't of Navy*, 562 U.S. 562, 566 (2011).

28.   An agency can only withhold information in a responsive record "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA]" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A).

29.   FOIA places the burden on the agency to prove that it may withhold responsive records or portions of records from a requester. *Id.* § 552(a)(4)(B). In order to satisfy this burden, the agency must submit affidavits with "reasonably detailed descriptions of the [withheld] documents" and "allege facts sufficient to establish an exemption." *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).

30.   Moreover, if information contained in a document falls within one of FOIA's enumerated exemptions, an agency may not simply withhold the entire document. *See Hamdan v. DOJ*, 797 F.3d 759, 778-79 (9th Cir. 2015) (observing that courts must "make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable"). An agency is required to take reasonable steps to segregate and disclose "all reasonably segregable portions of a [withheld] document." *Id.*; 5 U.S.C. § 552(a)(8)(A)(ii).

31.   If an agency cannot adequately justify withholding records in full or in part, FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

32.   Finally, this Court also "has the authority to oversee and supervise the agency's progress in responding to the request." *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 244 (D.D.C. 2017) (citing *CREW*, 711 F.3d at 189); *see also Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline.").

**FACTUAL BACKGROUND**

33.   CFS, through its Pollinators & Pesticides Campaign, works to protect pollinators, public health, and the environment from the harm of toxic pesticide use in industrial agriculture, including dicamba and its newer iterations XtendiMax, FeXapan, and Engenia. CFS also works to strengthen FIFRA regulations, including the regulatory process for states to restrict pesticide uses beyond the federal label under FIFRA Section 24(c). To fulfill such objectives, CFS submitted to EPA four FOIA requests concerning the nature of EPA's decision-making process in regards to its registration of dicamba pesticides on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020.

**April 12, 2019 Request (EPA-HQ-2019-005017)**

34.   On April 12, 2019, CFS submitted to EPA a FOIA request for, "[a]ny and all documents, from January 1, 2018 to present, regarding the Environmental Protection Agency's scientific assessment of dicamba formulations XtendiMax, FeXapan and/or Engenia, which contain the communications from or to the following employees of the EPA's Office of Chemical Safety and Pollution Prevention: (A) Deputy Assistant Administrator Erik Baptist; (B) Deputy Assistant Administrator Nancy Beck; (C) Deputy Assistant Administrator for Programs Charlotte Bertrand; and (D) Environmental Engineer James Tyree." Agency FOIA Tracking No. EPA-HQ-2019-005017. CFS explained that release of the requested records was in the public's best interest because disclosure would significantly contribute to public understanding of the operations or activities of the government, and because obtaining the information was of no commercial interest to CFS.

35.   An initial determination on the April 12, 2019 FOIA Request was due by May 10, 2019, twenty working days after the date CFS submitted the request.

36.   On April 12, 2019, EPA sent an automatic acknowledgement of the receipt of CFS's April 12, 2019 FOIA Request, and assigned the request Tracking Number EPA-HQ-2019-005017.

37.   EPA sent CFS a letter granting CFS's fee waiver request in full on April 16, 2019.

38.   On May 10, 2019, EPA's Office of Pesticide Programs sent an initial response letter to CFS via email stating that the agency was "processing [CFS's] request," that its "IT staff [was] conducting an electronic console search for the responsive records," and that "[r]equests involving electronic console searches can take many months to complete, depending on the number of records collected."

39.   Nearly two months after EPA was required to provide CFS with an initial determination regarding CFS's April 12, 2019 FOIA request, CFS emailed EPA on July 9, 2019, stating that the response and accompanying letter sent on May 10, 2019 did "not qualify as an initial determination under 5 U.S.C. § 552(a)(6)(A)." CFS requested that the agency provide "an adequate initial determination, including: (1) 'the agency's determination of whether or not to comply with the request,' (2) 'the reasons for its decision,' and (3) 'notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse.'" (Citing *Oglesby*, 920 F.2d at 65; *CREW*, 711 F.3d at 188 (holding that a determination under 5 U.S.C. § 552(a)(6)(A) "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future.")). CFS also requested "that the agency provide an estimated completion date as required by FOIA, 5 U.S.C. § 552(a)(7)(B)(ii)."

40.   In response to CFS's July 9, 2019 email inquiring about EPA's initial determination regarding its April 12, 2019 FOIA Request, the Office of Pesticide Programs responded on July 11, 2019, "acknowledge[ing] receipt of [CFS's] email regarding [EPA's] initial response and the other concerns regarding...FOIA request EPA-HQ-2019-00501." The agency stated that it would "update [CFS] sometime next week regarding these concerns and estimate completion date."

41.   On July 18, 2019, EPA emailed CFS with an update regarding CFS's April 12, 2019 FOIA Request and an estimated completion date, stating that the Office of Pesticide Programs "received approximately 150 records that may be responsive to [CFS's] request and [EPA] estimate[s] that it will take 1-2 months or sooner to complete this request."

42. At this time, EPA's online FOIA tracker states that the status for FOIA request EPA-HQ-2019-005017 is "assignment," meaning that the request has not begun "processing."[1]

43. One year, seven months, and twenty-two days has passed since CFS submitted its April 12, 2019 FOIA request, and the agency has not provided an initial determination in response to the April 12, 2019 FOIA Request or produced any responsive records. EPA has failed to provide a determination describing the scope of the records it intends to produce or withhold, the reasons for withholding any records, or informed CFS that it may appeal any specific adverse determination within the relevant time period in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

44. CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

45. As of the date of this complaint, CFS has received no further communication from EPA.

46. None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the April 12, 2019 FOIA Request.

47. CFS has been required to expend resources to prosecute this action.

**April 29, 2019 Request (EPA-HQ-2019-005351)**

48. On April 29, 2019, CFS submitted to EPA a FOIA request for, "[a]ny and all documents concerning EPA's reevaluation of the regulatory process for states to restrict pesticide uses beyond the federal label under Section 24(c) of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) dating from January 2017 to the present." Agency FOIA Tracking No. EPA-HQ-2019-005351. CFS explained that release of the requested records was in the public's best interest because disclosure would significantly contribute to public understanding of the operations or activities of the government, and because obtaining the information was of no commercial interest to CFS.

---

[1] *See* https://foiaonline.gov/foiaonline/action/public/search/quickSearch?query=EPA-HQ-2019-005017.

49.   An initial determination on the April 29, 2019 FOIA Request was due by May 28, 2019, twenty working days after the date CFS submitted the request.

50.   On May 1, 2019, EPA sent an automatic acknowledgement of the receipt of CFS's April 29, 2019 FOIA Request, and assigned the request Tracking Number EPA-HQ-2019-005351.

51.   EPA responded to CFS's fee waiver request on May 14, 2019, stating, "[CFS's] request for Fee Waiver for the FOIA request EPA-HQ-2019-005351 has been determined to be not applicable as the request is not billable."

52.   On May 30, 2019, EPA's Office of Pesticide Programs emailed CFS an initial response letter to its April 29, 2019 FOIA Request. The letter confirmed that EPA was "diligently processing [CFS's] request" by "working with the subject matter experts in collecting the responsive records and identifying the staff that would have responsive records." It stated that "[o]nce [EPA] identif[ies] the staff who would have responsive records," EPA would "then conduct an Agency's IT electronic console search (email records) and search for hardcopy records." In the same initial response, the agency also agreed to provide CFS with "an estimated completion date to process [CFS's] request, based on the number of records collected," and informed CFS that "[t]he collection of records [would] have to undergo a FOIA exemption review before [EPA] can release the responsive records to [CFS]."

53.   Exactly forty days after EPA sent its May 30, 2019 initial response stating that EPA was currently processing CFS's April 29, 2019 request and would provide CFS with an estimated completion date once it collected all responsive records to its request, CFS emailed EPA on July 9, 2019, inquiring about the agency's initial determination and an estimated completion date. In its email, CFS expressed that while it appreciated EPA's attention to its request, that the agency's May 30, 2019 response did "not qualify as an initial determination under 5 U.S.C. § 552(a)(6)(A)," and that EPA's online FOIA tracker still indicated that this request was not yet processing. CFS requested that EPA "provide CFS with an adequate initial determination, including: (1) 'the agency's determination of whether or not to comply with the request,' (2) 'the reasons for its decision,' and (3) 'notice of the right of the requester to appeal to the head of the agency if the

initial agency decision is adverse.'" (Citing to *Oglesby*, 920 F.2d at 65; *CREW*, 711 F.3d at 188 (holding that a determination under 5 U.S.C. § 552(a)(6)(A) "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future.")). CFS also requested that the agency provide "an estimated completion date as required by FOIA, 5 U.S.C. § 552(a)(7)(B)(ii)."

54.   In response to CFS's July 9, 2019 inquiry, EPA's Office of Pesticide Programs emailed CFS on July 11, 2019, "acknowledge[ing] receipt of [CFS's] email regarding [EPA's] initial response and the other concerns regarding [CFS's] FOIA request EPA-HQ-2019-005351," and agreeing to "update [CFS] sometime next week regarding these concerns and estimate completion date."

55.   EPA emailed CFS on July 18, 2019, updating CFS about the number of responsive records the Office of Pesticide Programs had since collected regarding its April 29, 2019 FOIA Request. EPA stated that the agency had "received approximately 3000 records that may be responsive to [CFS's] request." The email also provided an estimated completion date to process CFS's request, approximating that it "would take 3-4 months or sooner to complete."

56.   At this time, EPA's online FOIA tracker states that the status of FOIA request EPA-HQ-2019-005351 is "assignment," meaning that the request has not begun "processing."[2]

57.   One year, seven months, and five days has passed since CFS submitted its April 29, 2019 FOIA Request, and the agency has not provided an initial determination in response to CFS's April 29, 2019 FOIA Request or produced any responsive records. EPA has failed to provide a determination describing the scope of the records it intends to produce or withhold, the reasons for withholding any records, or informed CFS that it may appeal any specific adverse determination within the relevant time period in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

---

[2] *See* https://www.foiaonline.gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-HQ-2019-005351&type=request.

58.   CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. **§** 552(a)(6)(C)(i).

59.   As of the date of this complaint, CFS has received no further communication from EPA.

60.   None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the April 29, 2019 FOIA Request.

61.   CFS has been required to expend resources to prosecute this action.

**June 17, 2019 Request (EPA-HQ-2019-006587)**

62.   On June 17, 2019, CFS submitted to EPA a FOIA request for, "[a]ny and all documents related to the State FIFRA Issues Research and Evaluation Group (SFIREG)'s June 3 & 4, 2019 Full Committee meeting of the 10 EPA regions in their co-regulatory capacity in pesticide enforcement and/or certification programs regarding: (a) Regional reporting of dicamba injury through the growing season; and (b) EPA's 2019 end-of-season survey on dicamba injury." Agency FOIA Tracking No. EPA-HQ-2019-006587. CFS explained that release of the requested records was in the public's best interest because disclosure would significantly contribute to public understanding of the operations or activities of the government, and because obtaining the information was of no commercial interest to CFS.

63.   An initial determination on the June 17, 2019 FOIA Request was due by July 16, 2019, twenty working days after the date CFS submitted the request.

64.   On June 17, 2019, EPA sent an automatic acknowledgement of the receipt of CFS's, 2019 FOIA Request, and assigned the request Tracking Number EPA-HQ-2019-006587.

65.   EPA notified CFS on June 18, 2019, that the agency assigned CFS's June 17, 2019 FOIA Request to EPA's Office of Chemical Safety and Pollution Prevention for processing. In the same email, EPA also stated that it received CFS's request for a fee waiver and that a determination would be sent in a separate correspondence.

66.   On July 16, 2019, EPA emailed CFS an initial response letter confirming that the agency was "diligently processing [CFS's] request" by "working with the subject matter experts in collecting the responsive records and identifying the staff that would have responsive records."

EPA stated that "[o]nce [EPA] identif[ies] the staff who would have responsive records," it would "then conduct an Agency's IT electronic console search (email records) and search for hardcopy records." In the same initial response, the agency agreed to provide CFS with "an estimated completion date to process [CFS's] request, based on the number of records collected." EPA also informed CFS that "[t]he collection of records [would] have to undergo a FOIA exemption review before [EPA] can release the responsive records to [CFS]," and that EPA would "provide [CFS] with records on a rolling bases as records become available for release after the completion of the FOIA exemption review within 3 weeks or sooner."

67. At this time, EPA's online FOIA tracker states that the status of FOIA request EPA-HQ-2019-006587 is "processing,"[3] but EPA has yet to provide CFS with any responsive records or an initial determination and estimated date of completion.

68. One year, five months, and seventeen days has passed since CFS submitted its June 17, 2019 FOIA Request, and the agency has not provided an initial determination in response to CFS's June 17, 2019 FOIA Request, supplied an estimated date of completion, or produced any responsive records. EPA has failed to provide a determination describing the scope of the records it intends to produce or withhold, the reasons for withholding any records, or informed CFS that it may appeal any specific adverse determination within the relevant time period in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

69. CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

70. As of the date of this complaint, CFS has received no further communication from EPA.

71. None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the June 17, 2019 FOIA Request.

72. CFS has been required to expend resources to prosecute this action.

---

[3] *See* https://www.foiaonline.gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-HQ-2019-006587&type=request.

**February 11, 2020 Request (EPA-HQ-2020-002980)**

73.   On February 11, 2020, CFS submitted to EPA a FOIA request for, "[a]ny and all documents related to the November 2018 decision to register XtendiMax or future 2020 registration decision on XtendiMax." Agency FOIA Tracking No. EPA-HQ-2020-002980. CFS explained that release of the requested records was in the public's best interest because disclosure would significantly contribute to public understanding of the operations or activities of the government, and because obtaining the information was of no commercial interest to CFS.

74.   An initial determination on the February 11, 2020 FOIA Request was due by March 11, 2020, twenty working days after the date CFS submitted the request.

75.   On February 19, 2020, EPA sent an automatic acknowledgement of the receipt of CFS's February 11, 2020 FOIA Request, and assigned the request Tracking Number EPA-HQ-2020-002980.

76.   At this time, EPA's online FOIA tracker states that the status of FOIA request EPA-HQ-2020-002980 is "processing,"[4] but EPA has yet to provide CFS with any responsive records or an initial determination and estimated date of completion.

77.   Nine months and twenty-three days has passed since CFS submitted its February 11, 2020 FOIA Request, and the agency has not provided an initial determination in response to CFS's February 11, 2020 FOIA Request, supplied an estimated date of completion, or produced any responsive records. EPA has failed to provide a determination describing the scope of the records it intends to produce or withhold, the reasons for withholding any records, or informed CFS that it may appeal any specific adverse determination within the relevant time period in 5 U.S.C. § 552(a)(6)(A)(i) or 5 U.S.C. § 552(a)(6)(B).

78.   CFS is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

---

[4] *See* https://www.foiaonline.gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-HQ-2020-002980&type=request.

79. As of the date of this complaint, CFS has received no further communication from EPA.

80. None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the February 11, 2020 FOIA Request.

81. CFS has been required to expend resources to prosecute this action.

**FIRST CLAIM FOR RELIEF:**

**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**Failure to Comply with FOIA's Mandatory Determination Deadline for CFS's FOIA Requests**

82. Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

83. EPA violated FOIA by failing to make a determination on CFS's April 12, 2019 FOIA Request, Tracking Number EPA-HQ-2019-005017, April 29, 2019 FOIA Request, Tracking Number EPA-HQ-2019-005351, June 17, 2019 FOIA Request, Tracking Number EPA-HQ-2019-006587, and February 11, 2020 FOIA Request, Tracking Number EPA-HQ-2020-002980. 5 U.S.C. § 552(a)(6).

84. CFS has a statutory right to receive a determination within the congressionally mandated deadline of twenty working days. *Id.*

85. Over nineteen months has passed since CFS filed the April 12, 2019 FOIA Request and April 29, 2019 FOIA Request. While more than seventeen months and nine months has passed since CFS filed the June 17, 2019 FOIA Request and February 11, 2020 FOIA Request, respectively. To date, EPA has not provided a determination, notwithstanding the requirement of 5 U.S.C. § 552(a)(6)(A) of an agency response within twenty working days detailing the scope of the records the agency intends to produce and withhold, the reasons for making that determination, and an explanation of the process by which a requester can administratively appeal that determination.

86. Even accounting for a ten-working-day extension, EPA has still failed to meet the deadline by which an initial determination is required.

87. EPA's failure to make an initial determination with regard to the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request, thus unlawfully delaying its response beyond the deadline that FOIA mandates, has prejudiced CFS's ability to timely obtain public records. *Id.* § 552(a)(6)(A)(i).

88. As such, CFS has exhausted the applicable administrative remedies with respect to the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

89. Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to EPA in the foreseeable future.

90. CFS's organizational activities will be adversely affected if EPA continues to violate FOIA by failing to disclose responsive records as it has in these cases.

91. Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, EPA will continue to violate CFS's rights to receive public records under FOIA.

92. CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## SECOND CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Conduct an Adequate Search for Responsive Records to CFS's FOIA Requests**

93. Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

94. EPA violated FOIA by failing to conduct an adequate search for responsive records pursuant to 5 U.S.C. § 552(a)(3)(C)-(D).

95. CFS has a statutory right to have EPA process its April 12, 2019 FOIA Request, EPA-HQ-2019-005017, April 29, 2019 FOIA Request, EPA-HQ-2019-005351, June 17, 2019 FOIA Request, EPA-HQ-2019-006587, and February 11, 2020 FOIA Request, EPA-HQ-2020-002980, in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3)(C)-(D).

96.   EPA violated CFS's right when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request, thus prejudicing CFS's ability to timely obtain public records.

97.   CFS has exhausted the applicable administrative remedies with respect to the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

98.   Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to EPA in the foreseeable future.

99.   CFS's organizational activities will be adversely affected if EPA continues to violate FOIA by failing to disclose responsive records as it has in these cases.

100.   Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, EPA will continue to violate CFS's rights to receive public records under FOIA.

101.   CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## THIRD CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

#### Failure to Disclose All Responsive Records to CFS's FOIA Requests

102.   Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

103.   EPA violated FOIA by failing to promptly disclose records that are responsive to CFS's April 12, 2019 FOIA Request, EPA-HQ-2019-005017, April 29, 2019 FOIA Request, EPA-HQ-2019-005351, June 17, 2019 FOIA Request, EPA-HQ-2019-006587, and February 11, 2020 FOIA Request, EPA-HQ-2020-002980. 5 U.S.C. § 552(a)(4)(B).

104.   CFS has a statutory right to the records it seeks, and there are no applicable exemptions under FOIA that provide a legal basis for EPA to withhold these records from CFS. *See id.* § 552(b)(1)-(9).

105.   To date, EPA has not provided any records requested by CFS in the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request, notwithstanding the requirement of 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(C) to make agency records "promptly available."

106.   As such, EPA is wrongfully withholding disclosure of information sought by CFS, information to which it is entitled and for which no valid disclosure exemption has been claimed. EPA's unlawful withholding prejudices CFS's ability to timely obtain public records.

107.   CFS has exhausted the applicable administrative remedies with respect to the April 12, 2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

108.   Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to EPA in the foreseeable future.

109.   CFS's organizational activities will be adversely affected if EPA continues to violate FOIA by failing to disclose responsive records as it has in these cases.

110.   Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, EPA will continue to violate CFS's rights to receive public records under FOIA.

111.   CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

### FOURTH CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**Failure to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records to CFS's FOIA Requests**

112.   Plaintiff realleges and incorporates by reference the allegations made in all preceding paragraphs.

113.   EPA violated FOIA by failing to take reasonable steps to segregate and release nonexempt portions of lawfully exempt records in response to the April 12, 2019 FOIA Request, EPA-HQ-2019-005017, April 29, 2019 FOIA Request, EPA-HQ-2019-005351, June 17, 2019 FOIA

1   Request, EPA-HQ-2019-006587, and February 11, 2020 FOIA Request, EPA-HQ-2020-002980. 5

2   U.S.C. § 552(a)(8)(A)(ii)(II).

3   114.   CFS has a statutory right to any reasonably segregable portion of a record that contains

4   information that is subject to any of FOIA's exemptions. *Id.*

5   115.   To date, EPA has failed to disclose any records to CFS, including nonexempt information

6   that could be reasonably segregated and released in response to the April 12, 2019 FOIA Request,

7   April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February 11, 2020 FOIA

8   Request, thus prejudicing CFS's ability to timely obtain public records.

9   116.   CFS has exhausted the applicable administrative remedies with respect to the April 12,

10  2019 FOIA Request, April 29, 2019 FOIA Request, June 17, 2019 FOIA Request, and February

11  11, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

12  117.   Due to the nature of CFS's organizational activities, it will undoubtedly continue to

13  employ FOIA's provisions in record requests to EPA in the foreseeable future.

14  118.   CFS's organizational activities will be adversely affected if EPA continues to violate FOIA

15  by failing to disclose responsive records as it has in these cases.

16  119.   Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, EPA

17  will continue to violate CFS's rights to receive public records under FOIA.

18  120.   CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA.

19  *Id.* § 552(a)(4)(E).

20  ### FIFTH CLAIM FOR RELIEF:

21  ### VIOLATION OF THE FREEDOM OF INFORMATION ACT

22

**Failure to Provide an Estimated Date of Completion as Required by FOIA for CFS's FOIA**
23  **Requests EPA-HQ-2019-006587 and EPA-HQ-2020-002980**

24  121.   Plaintiff realleges and incorporates by reference the allegations made in all preceding

25  paragraphs.

26

27

28

122.   EPA violated FOIA by failing to provide CFS with an estimated date of completion as required by 5 U.S.C. § 552(a)(7)(A)-(B).

123.   CFS has a statutory right to have EPA process its June 17, 2019 FOIA Request, EPA-HQ-2019-006587, and its February 11, 2020 FOIA Request, EPA-HQ-2020-002980, in a manner which complies with FOIA. EPA has violated Plaintiff's rights in this regard by its failure to provide—by any means—an estimated completion date for its response to the June 17, 2019 FOIA Request and February 11, 2020 FOIA Request as required by FOIA. 5 U.S.C. § 552(a)(7)(A)-(B).

124.   EPA's failure to inform CFS of an estimated completion date for the June 17, 2019 FOIA Request and February 11, 2020 FOIA Request has prejudiced CFS's ability to timely obtain public records.

125.   CFS has exhausted the applicable administrative remedies with respect to the June 17, 2019 FOIA Request and February 11, 2020 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

126.   Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to EPA in the foreseeable future.

127.   CFS's organizational activities will be adversely affected if EPA continues to violate FOIA by failing to disclose responsive records as it has in these cases.

128.   Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, EPA will continue to violate CFS's rights to receive public records under FOIA.

129.   CFS is entitled to reasonable costs of litigation, including attorney fees, pursuant to FOIA. *Id.* § 552(a)(4)(E).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court:

1.   Declare that Defendant violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

2.  Declare that Defendant failed to make and communicate an initial determination regarding Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

3.  Declare that Defendant failed to conduct an adequate search for agency records responsive to Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

4.  Declare that Defendant unduly delayed actual production of records responsive to Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

5.  Declare that Defendant unlawfully failed to provide reasonably segregable portions of records which may be lawfully subject to a FOIA exemption to Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

6.  Declare that Defendant unlawfully failed to provide Plaintiff with an estimated date of completion as to the search and production of Plaintiff's June 17, 2019 FOIA Request and February 11, 2020 FOIA Request;

7.  Order Defendant to provide a lawful initial determination on Plaintiff's four FOIA requests, submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020;

8.  Order Defendant to conduct searches that are reasonably calculated to locate all records responsive to Plaintiff's four FOIA requests submitted on April 12, 2019, April 29, 2019, June 17, 2019, and February 11, 2020 using search methods reasonably likely to lead to discovery of all responsive records;

9.  Order Defendant to produce, by a date certain, any and all nonexempt responsive records or segregable portion of the records and a *Vaughn* index of any responsive records or portion of responsive records withheld under a claim of exemption, at no cost to Plaintiff;

10.  Enjoin Defendant from continuing to withhold any and all nonexempt responsive records or segregable portion of the records;

11. Retain jurisdiction of this action to ensure the processing of Plaintiff's FOIA requests and that no agency records or portion of the records are improperly withheld;

12. Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

13. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 4th Day of December, 2020.

*/s/ Victoria A. Yundt*

VICTORIA A. YUNDT (CA Bar No. 323186)
SYLVIA SHIH-YAU WU (CA Bar No. 273549)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
Ph: (415) 826-2770
Fax: (415) 826-0507
Emails:   tyundt@centerforfoodsafety.org
          swu@centerforfoodsafety.org

*Counsel for Plaintiff*